

**U.S. Department of Justice**
Civil Division
Federal Programs Branch

| **Mailing Address** | **Overnight Delivery Address** |
|---|---|
| P.O. Box 883 | 20 Massachusetts Ave., N.W. |
| Washington, D.C. 20044 | Washington, D.C. 20001 |

---

Joseph E. Borson                                                       Tel:  (202) 514-1944
Trial Attorney                                                              Fax:  (202) 616-8460
                                                                                      Joseph.Borson@usdoj.gov

September 18, 2017

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square, Room 435
New York, NY 10017

        Re:  *NAACP Legal Defense & Educational Fund, Inc., et al. v. Donald J. Trump, et al.*, No. 17-cv-05427 (ALC)

Dear Judge Carter:

        Defendants respectfully write to request that the Court hold a pre-motion conference to discuss their anticipated motion to dismiss plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

        Plaintiffs challenge the creation, composition, and operation of the Presidential Advisory Commission on Election Integrity (the "Commission").  The Amended Complaint brings four substantive claims against defendants: (1) that the creation of the Commission violated both the Fifth Amendment's equal protection component, because it was motivated by discrimination against voters of color, Am. Compl. ¶ 167, and its substantive due process component, *id.* ¶ 184; (2) that defendants have violated the Fifteenth Amendment's prohibition on intentional racial discrimination; (3) that the Commission constitutes unauthorized Presidential action, *id.* ¶¶ 196-97; and (4) that defendants violated the Federal Advisory Commission Act's ("FACA") requirements that advisory committees be "fairly balanced" and not "inappropriately influenced," 5 U.S.C. app. 2 § 5(b), Am. Compl. ¶¶ 221-23.  Plaintiffs also allege that such conduct violated the Administrative Procedure Act ("APA"), Am. Compl. ¶¶ 235-36, and request relief under the Declaratory Judgment, *id.* ¶¶ 228-29, and Mandamus Acts, *id.* ¶¶ 231-32.

        Defendants plan to move to dismiss the Amended Complaint.  First, plaintiffs lack Article III standing.  Plaintiffs, which are all organizations, have not established standing to sue in their own right.  They generally claim they are injured because they "will be required to divert resources" to educate minority voters about their rights, Am. Compl. ¶ 1, or they "anticipat[e] undertaking such activities," *see, e.g.*, *id.* ¶ 8.  Plaintiffs do not, however, generally allege that they have *already* diverted resources in response to defendants' activities; rather, they "anticipate" doing so in the future.  But such *potential* resource commitment is too speculative to

satisfy the requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). That is particularly true where, as here, the purported injury – future resource allocation decisions – is within plaintiffs' control.

"[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). Such an abstract injury is all that is at issue here. *Havens Reality Corporation v. Coleman*, 455 U.S. 363 (1982) is not to the contrary. There, the Court held that organizations have standing when a defendant makes it more difficult for the plaintiffs to assist their clients and they have to devote "significant resources to identify and counteract the defendant's [practices]." *Id.* at 379. But that case and its progeny hold that there is standing only when the defendants' actions cause the organization a distinct and direct harm. *See, e.g.*, *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 293, 295 (2d Cir. 2011). Plaintiffs' allegations of injury here are not so specific, but instead constitute the type of general-issue advocacy that is insufficient for Article III standing. *E.g.*, Am. Compl. ¶ 29 (organization anticipates that it will "monitor and analyze the Commission."). Finally, to the extent that plaintiffs attempt to sue on behalf of their members, *e.g.*, *id.* ¶ 19, they have not established that they have "members [who] would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The Amended Complaint should also be dismissed for failure to state a claim. Plaintiffs claim that the Commission's creation was "motivated by racial discrimination," Am. Compl. ¶ 167; however, they fail to plead "facts sufficient to support a finding of racially discriminatory intent or purpose that would plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Iqbal*, 556 U.S. at 679 (claim to relief must be plausible to survive a Rule 12(b)(6) motion). In support of their claim, plaintiffs point first to statements by candidate and later President Trump, including when he suggested the possibility of voter fraud in the 2016 election. Am. Compl. ¶¶ 47, 49-55, 60. But statements about voter fraud do not by themselves evince an intent to discriminate on the basis of race or color – much less through the creation of the Commission half a year later. Indeed, the premise that a desire to prevent voter fraud necessarily embodies an intent to discriminate on the basis of race or color has been rejected by the Supreme Court. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters. . . . While the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear.").

Nor does the appointment of certain Commissioners plausibly show a discriminatory intent on the part of the Commission or the President. Plaintiffs say that some Commissioners are interested in voter fraud laws or serve on organizations that "promote restrictive . . . voting laws." *E.g.*, Am. Compl. ¶¶ 97-100. But merely holding these views does not plausibly evince a discriminatory intent, much less one attributable to the Commission. Neither does the fact that the Vice Chair runs a crosscheck system that allegedly has "false positives . . . disproportionately likely to be voters of color." *Id.* ¶ 94. Even assuming these facts, if true, show discriminatory effect on the basis of color, discriminatory effect is not enough for a constitutional violation. *Hayden*, 594 F.3d at 162-63. In any event, isolated statements or actions by individual

Commissioners do not show that the *Commission* was constituted to intentionally discriminate.

Plaintiffs' other factual allegations similarly fail to show plausible evidence of an intent to discriminate. Plaintiffs contend that the Commission departed from FACA's requirement that an advisory committee be "fairly balanced." Am. Compl. ¶ 171. But, even if true, and it is not, an unbalanced committee would not by itself show a discriminatory intent. In any event, FACA's fair balance and inappropriate influence provisions are non-justiciable for lack of manageable standards. *See Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods*, 886 F.2d 419, 426 (D.C. Cir. 1989) (Silberman, J., concurring in the judgment); *see also* Am. Compl. ¶¶ 220-24 (raising FACA claim). Plaintiffs also claim that the President departed from the requirements of Executive Order 12,838 and 41 C.F.R. § 102-3.60(b)(3) in constituting the Commission. Am. Compl. ¶¶ 171-72. Both of these provisions only apply to *agency-created* committees, not, as here, Presidential committees. Plaintiffs also say that, in certain circumstances, courts have held that racially-suppressive voting measures were justified by relying on unsubstantiated claims of voter fraud. *Id.* ¶¶ 173-76. But whatever the particular contexts of those state laws, these examples cannot be used to generalize the argument that *any* claim about voter fraud is necessarily motivated by discrimination. *See Crawford*, 553 U.S. at 194-96. Finally, plaintiffs allege that the Commission has had a "chilling effect" on voters. Am. Compl. ¶¶ 155-161, 178-81. But there are no factual allegations that this chilling effect, if real, has a disproportionate effect on voters of color, and even if it did, disproportionate effect is not sufficient for an equal protection claim. *Washington v. Davis*, 426 U.S. 229, 239 (1976).

Plaintiffs' claim that defendants have violated the Fifth Amendment's substantive due process clause should also be dismissed. "[O]nly the most egregious official conduct," conduct that "shocks the conscience," will subject the government to liability for a substantive due process violation based on executive action. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). That is not the case here. Moreover, judicial review of the President's ability to seek advice would implicate significant separation of powers concerns. *See In re Cheney*, 334 F.3d 1096, 1113 (D.C. Cir. 2003) (Randolph, J., dissenting).

For the reasons above, plaintiffs have also failed to state a claim that defendants violated the Fifteenth Amendment, which also requires discriminatory intent. *Hayden*, 594 F.3d at 163. Nor have defendants taken "unauthorized presidential action" by allegedly creating a new "executive organ" that is investigating individuals. Am. Compl. ¶ 196. There are no factual allegations that the Commission will investigate individuals; therefore, any claims based on such allegations are outside this Court's jurisdiction. *See Clapper*, 568 U.S. at 401.

Plaintiffs' APA claim fails because the defendants are not "agencies," as is required to state a claim under the APA. Am. Compl. ¶¶ 234-38; *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, No. 17-1320 (CKK), 2017 WL 3141907 (D.D.C. July 24, 2017), *appeal docketed* July 27, 2017. Their claim under the Declaratory Judgment Act is unavailing because declaratory relief is not an independent cause of action. *See Ali v. Rumsfeld*, 649 F.3d 62, 778 (D.C. Cir. 2011). Finally, mandamus requires a "clear and indisputable right to its issuance." *Escaler v. CIS*, 582 F.3d 288, 292 (2d Cir. 2009). There is no such right here.

Defendants are prepared to discuss these matters further at the pre-motion conference.

3

Respectfully submitted,

*/s/ Joseph E. Borson*
ELIZABETH J. SHAPIRO
CAROL FEDERIGHI
KRISTINA A. WOLFE
JOSEPH E. BORSON
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1944
Email: joseph.borson@usdoj.gov

*Counsel for Defendants*

CC: Opposing Counsel (by ECF)