*New York Office*
*40 Rector Street, 5th Floor*
*New York, NY  10006-1738*
*T. (212) 965 2200 F. (212) 226 7592*
*www.naacpldf.org*



*Washington, D.C. Office*
*1444 Eye Street, NW, 10th Floor*
*Washington, D.C.  20005*
*T. (202) 682 1300 F. (202) 682 1312*

December 27, 2017

**VIA ECF**

The Honorable Andrew L. Carter Jr.
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    **<u>NAACP Legal Defense and Educational Fund, Inc., et al. v. Trump, et al.,
17 Civ. 05427 (ALC)</u>**

Dear Judge Carter:

      Plaintiffs respectfully write in response to Defendants' letter concerning the Memorandum Decision and Order in *Citizens for Responsibility and Ethics in Washington v. Trump*, No. 17 Civ. 458 (S.D.N.Y. Dec. 21, 2017) ("*CREW v. Trump*," "*CREW* Order"). Doc. 81. Plaintiffs further write to advise the Court of the recent decision concerning a challenge to the Presidential Advisory Commission on Election Integrity (PACEI), *Dunlap v. Presidential Advisory Commission on Election Integrity*, No. 17 Civ. 2361 (D.D.C. Dec. 22, 2017) ("*Dunlap* Opinion," attached hereto as Ex. A).

      Defendants advised the Court that the recent decision in *CREW v. Trump*, in which the plaintiffs allege President Trump violated the Domestic and Foreign Emoluments Clauses, was relevant to their pending motion to dismiss because it addresses the question of organizational standing. However, *CREW* confirms that Plaintiffs have organizational standing to bring their claims against Defendants here. In *CREW*, the district court recognized that an "organization has standing where the defendant's conduct or policy interferes with or burdens an organization's ability to carry out its usual activities" or "where [the organization] is forced to expend resources to prevent some adverse or harmful consequence on a well-defined and particularized class of individuals." *CREW* Order at 19, 20. Plaintiffs have satisfied these standards and established standing. Doc. 79 at 7-12.

      Unlike Plaintiffs, the plaintiff-organization in *CREW* lacked standing because it "fail[ed] to allege . . . that it was forced to expend resources to counteract and remedy the adverse consequences or harmful effects of Defendant's conduct." *CREW* Order at 21. Instead, "nearly *all* of the resources" the organization expended were "either in anticipation or direct furtherance of th[e] litigation." *Id*. at 23 (emphasis in original). Only in this context did the court observe that the organization's expenditure of resources were part and parcel of how it "spends its resources in the ordinary course." *Id*. In sum, the district court found that the organization in *CREW* sought



to "manufacture[ ] standing" by the "self-inflicted" harm of litigation expenses. *Id.* at 19, 24. That is in stark contrast to this case, where Defendants' activities have caused Plaintiffs' constituents to decline to register to vote or require additional counseling before agreeing to register to vote. *See* Doc. 79 at 7-10; Doc. 66 ¶ 4 (alleging facts as to constituents' concerns related to the PACEI, which caused The Ordinary People Society's expenditure of resources); ¶¶ 19-20 (same, with respect to Hispanic Federation and its constituents). Because Plaintiffs here, unlike the organizational-plaintiff in *CREW* have "expend[ed] resources to counteract and remedy the adverse consequences or harmful effects of Defendant[s]' conduct," they have standing. *CREW* Order at 21.

Furthermore, the *CREW* decision does not address associational standing or standing to bring a claim under FACA. Contrary to Defendants' assertion (Doc. 80 at 3), Plaintiffs' Complaint alleged facts demonstrating associational standing based on the stigmatic harm caused by the PACEI's creation and activity. *See* Doc. 66 ¶ 11 (noting stigma suffered by "Florida NAACP and its members"); *id*. ¶ 15 (same, respecting Pennsylvania NAACP and its members). Consistent with precedent, Plaintiffs provided further detail in support of those allegations in a declaration in response to Defendants' 12(b)(1) motion. *See* Doc. 79 at 18, *see also* Doc. 79-4, Exh. C ¶ 11 (President of Pennsylvania NAACP and registered voter, noting President Trump's "statements did more than degrade entire groups of citizens—they made minorities seem like second class citizens and more likely to commit crimes"). These *facts* establish associational standing based on stigmatic harm, and Plaintiffs were not obligated to set forth their legal theory in their Complaint. *See* Doc. 79 at 15-18. Plaintiffs also pleaded facts showing that they are directly affected by the work of the PACEI, but that the voting rights community has been excluded from the PACEI—*facts* that provide an independent basis for standing on their FACA claim. *See* Doc. 66 ¶¶ 80-152; Doc. 79 at 36-40.

In *Dunlap v. PACEI*, the district court granted in part, and denied in part as premature, a preliminary injunction filed by PACEI member Matthew Dunlap who alleges that he has been denied full and meaningful participation in the commission. Ex. A, *Dunlap* Opinion at 3. The court explained that "FACA is designed to prevent commissions from, *inter alia*, convening a group of like-minded individuals, excluding duly appointed members with opposing viewpoints, and rubber-stamping the political agenda of the appointing authority." *Id.* at 3-4. Rejecting the Government's position that applying FACA to a presidential advisory committee raises constitutional concerns, the court held that Commissioner Dunlap could bring his FACA claim under mandamus (without reaching whether he could bring the claim under the APA). *See id.* at 17-20. In so holding, the court emphasized that the FACA provision at issue in *Dunlap* imposed



a non-discretionary duty because it used the word "shall." *See id*. at 17. That analysis applies with equal force here. *See* Doc. 79 at 35-36.

                    Respectfully submitted,

                    /s/ *Natasha Merle*
                    Natasha Merle

Cc:    All counsel of record (via ECF)